## HOUSTON EAST & WEST TEXAS RAILWAY COMPANY v. E. B. ADAMS ET AL.

### Decided November 23, 1906.

#### 1.—Impeaching Witness—Immaterial Matter.

In a suit for damages for backing a train upon and injuring an infant at a crossing over a railroad track, a witness for defendant testified that there was no man on the rear end of the train to keep a lookout while the train was backing, but denied saying at the time of the accident that it was the company's fault, and that plaintiff had a good cause of action. Held, the statements denied by the witness were inadmissible and immaterial, and impeaching testimony should not have been admitted. The fact that the court instructed the jury to consider the impeaching testimony for no other purpose except as affecting the credibility of the witness did not cure the error.

#### 2.—Operation of Trains—Degree of Care—Duty of Lookout.

The operatives of railway trains are charged with the general duty of reasonable lookout, not only to those of right on the track but to trespassers as well. If they are derelict in this, even a trespasser may recover, unless his own want of care intervenes.

#### 3.—Charge—Negligence.

In a suit for personal injuries caused by backing a train upon the plaintiff the court charged the jury, in substance, that if they found that the defendant backed its train against the standing car which injured plaintiff, and that such act constituted negligence, they should find for the plaintiff. Held error, because the mere act of backing the train against the standing car could not be negligence unless the act was accompanied by some independent dereliction of duty.

#### 4.—Charge—Negative Error.

In a suit by one parent for personal injuries to his child, a charge that if both parents were guilty of contributory negligence the parent suing could not recover was negative error, and should have been corrected by a requested instruction to the effect that the contributory negligence of either parent would defeat a recovery.

#### 5.—Injury—Proximate Cause—Undisputed Fact.

A charge which submits as an issue a fact about which there can be no question under the evidence is error, but only negative error.

#### 6.—Public Crossing—User.

Whether or not the crossing of a foot path over a railroad track becomes a public crossing by use of the public is a question of fact which may be established by circumstantial evidence. Shiflet's case (98 Texas, 331) distinguished.

#### 7.—Items of Damage—Pleading.

Where a parent sues for personal injuries to his child, and alleges in general terms that, because of its crippled condition, he will be forced to incur large and heavy expenses for its care, maintenance and education which would not have been necessary but for the negligence of defendant, no particular amount being stated; that he had already incurred large expense for medical treatment, medicines and nursing in the sum of $300, a special exception to the petition requiring the plaintiff to point out the respects in which the cost of the education, care and maintenance of the child would be thereafter increased, and to itemize the amounts already expended, should have been sustained.

#### 8.—Double Damages—Charge.

Where the amount of the verdict is issuable on the record, a charge allowing double damages in a suit for personal injuries is reversible error. Charge considered, and held subject to this objection.

**9.—Charge—Amount Claimed.**

In a damage suit an instruction that, under a given state of facts, the jury might find for the plaintiff any amount not exceeding the amount claimed in the petition naming it is generally condemned as tending to impress the jury that, in the opinion of the court, such a sum might be awarded under the evidence.

Appeal from the District Court of San Jacinto County. Tried below before Hon. G. T. Turnley.

*Baker, Botts, Parker & Garwood, J. C. Feagin* and *C. L. Carter,* for appellant.—It is error for the court to permit the introduction of evidence to impeach a witness on irrelevant, immaterial or collateral matters. Drake v. State, 15 S. W. Rep., 727; Davis v. State, 20 S. W. Rep., 923; Wilson v. State, 38 S. W. Rep., 611; Cogdell v. State, 63 S. W. Rep., 646; Saunders v. City Ry., etc., 41 S. W. Rep., 1033; 1 Greenleaf, sec. 449-462; 1 Whart. Ev., 551; Whart. Cr. Ev., 482.

To admit evidence of a contradictory statement the impeaching evidence must be inconsistent with the witness's statement on the stand. Hall .v. Simmons, 24 Texas, 229.

It is not admissible to impeach a witness on an immaterial matter. Gulf, C. & S. F. Ry. v. Kizziah, 86 Texas, 92; Croft v. Smith, 51 S. W. Rep., 1090; Gulf, C. & S. F. Ry. v. Coon, 69 Texas, 734; Texas & Pac. Ry. v. Phillips, 91 Texas, 278; Smye v. Groesbeck, 7 Texas Ct. Rep., 482.

The rule is laid down in the English case of Attorney General v. Hitchcock, 1 Exch., 99, by Pollock Chief Baron, as follows: In order to be admissible as impeaching evidence it must appear that the fact offered could have been shown in evidence independently of the contradiction in support of the plea of the party offering it. This is the rule that seems to have been universally adopted. See decisions of Court of Criminal Appeals above cited.

Where actual damages are claimed which do not necessarily result from the act complained of, the items of such damages must be specifically pleaded, and the amount thereof stated, so as to apprise the opposite party of the amount and character of damages that will be proved. Oriental Co. v. Barclay, 41 S. W. Rep., 122; Neville v. Mitchell, 66 S. W. Rep., 580; Sedberry v. Verplanck, 31 S. W. Rep., 242; Texas & Pac. Ry. v. Curry, 64 Texas, 87; Missouri Pac. Ry. v. Mitchell, 75 Texas, 80.

It was error in defining contributory negligence of the child to submit in connection therewith the issue of proximate cause, for the reason that if her act in stepping upon the defendant's track at the time she did was negligence, it follows, as a matter of law, that it was the proximate cause of the injury, and submitting the question as one of fact to the jury is misleading and confusing. Texas & Pac. Ry. v. McCoy, 90 Texas, 264; Gulf, C. & S. F. Ry. v. Rowland, 90 Texas, 365; Culpepper v. I. & G. N. Ry., 90 Texas, 627.

The charge is erroneous, in that it permits a recovery in behalf of the plaintiff without regard to the question whether she was a licensee

or a trespasser on the defendant's track at the time of the injury. St. Louis S. W. Ry. v. Shiflet, 98 Texas, 331.

The charge is erroneous, and permits a double recovery for the plaintiff, in that it allows a recovery for each of the following things already sustained by her: (a) physical pain; (b) suffering; (c) mental anguish; (d) discomfort; (e) annoyance; (f) mortification; and also permits a double recovery for damages which she may in the future sustain by reason of the same items, and (a) for general impairment of her ability to follow the interest and pursuits of other girls; (b) general impairment of her ability to enjoy life; (c) decreased capacity to fill the place and perform the services and duties after her majority that she otherwise might have been but for the injury. Houston St. Ry. v. Reichart, 87 Texas, 546; Missouri, K. & T. Ry. v. Hannig, 91 Texas, 349; St. Louis S. W. Ry. v. Highnote, 74 S. W. Rep., 920; Texas Cent. Ry. v. Brock, 31 S. W. Rep., 500.

*Hutcheson, Campbell & Hutcheson,* for appellees.—That each railroad company is obligated to maintain a lookout at all places where it might be expected that persons would cross its tracks. Gulf, C. & S. F. v. West, 36 S. W. Rep., 102; Gulf, W. T. & P. Ry. Co. v. Letsch, 55 S. W. Rep., 585; affirmed in 56 S. W. Rep., 1134; St. Louis S. W. Ry. v. Bowles, 72 S. W. Rep., 452; Texas & P. v. Watkins, 88 Texas, 20; Houston & T. C. Ry. v. Boozer, 70 Texas, 537; St. Louis & T. Ry. v. Crosnoe, 72 Texas, 82.

The testimony of Booth did not offer a single fact to excuse defendant's negligence. He did not offer to prove that the defendant maintained any lookout except for the public crossing south of the depot, and testified that from where he was before he made the coupling, he could not and did not see the child, and therefore defendant has suffered nothing by his impeachment. Wilson v. State, 38 S. W. Rep., 611.

If the court did err in the paragraph complained of in the eighth and twelfth assignments, same was not prejudicial error, because, under the facts in this case, it clearly appears that the child was not guilty of contributory negligence. Beisiegel v. New York Central Ry. Co., 34 N. Y., 624; Gulf, W. T. & P. Ry. Co. v. Letsch, 55 S. W. Rep., 585; St. Louis S. W. Ry. v. Bowles, 72 S. W. Rep., 453.

The charge of the court complained of is not error, because the facts in this case show a continuous, open and notorious use of the track at the place where the child was hurt, and show conclusively that the railroad company actually knew its existence. St. Louis, S. W. Ry. v. Shiflet, 98 Texas, 331.

GILL, CHIEF JUSTICE.—Naomi, the seven year old child of E. B. Adams, had her foot crushed by one of the cars of the Houston, East & West Texas Railway Company and he has sued for himself and as next friend of his child and seeks to recover damages therefor on the theory that the injury was the result of the negligence of the train operatives in failing to give warning to keep a proper lookout.

The defendant answered by general denial and pleaded contributory negligence on the part of the parents in sending her upon an errand

which required her to cross the railway track at a dangerous point. Contributory negligence on the part of the child was also interposed against the suit in behalf of the child, as well as the suit in behalf of the parents.

A trial by jury resulted in a verdict and judgment for $10,000 in favor of the child and $4,000 for the parents. The company has appealed and here assails the result upon various grounds.

The following statement of the facts will be sufficient for the purposes of this opinion: At the time of the accident out of which this litigation arose, E. B. Adams and family lived in Shepherd, a village of three or four hundred inhabitants. Defendants' line of railway passed through Shepherd and on the occasion in question one of its freight trains was engaged in taking on some cattle from the stockpens at that point. The event was generally known in the town and had attracted a considerable crowd about the stockpens where the loading was in progress. The main line of the defendant runs south of the depot. A switch track lies immediately south of that. North of the depot is a switch track known as the house track. Standing on this were some loose freight cars not intended to be incorporated in the train and not connected with each other. The stock pens were considerably east of the company's depot and considerably east of the point where the loose cars were standing. At a point just at the southwest end of one of the loose cars a path crossed the tracks. This crossed at a point about 200 yards northeast of the depot and was used by those residing on the south side of the track to reach the stores on the north. From Adams' residence on the south to Smith's store on the north the path led in almost a direct line. There was a crossing a considerable distance northeast of the path. The nearest crossing southwest of the path was just west of the depot. The freight train in question was pointing northeast, and when a cattle car was loaded it would be shoved down by the engine on the house track. The loading had been going on for several hours and several cars had been so placed but none had been shoved against the standing cars. About 10:30 a. m., the mother of Naomi sent the child from her residence across to Smith's store to buy some meat. When the child reached the intersection of the path and track she undertook to cross at the southwest end of the standing car. The train at that instant was shoved against the standing car and the child was knocked down and injured as alleged.

There is evidence tending to show that the path was commonly used by the residents of the town as a foot crossing at that point, and this with the knowledge and acquiescence of the defendant. In view of the disposition of this appeal we do not detail the evidence bearing upon the point. It was sufficient to authorize the submission of the issue.

The house track was curved and the engine so far away from the point of the accident that neither the engineer nor the fireman could have seen the approach of the child. The crew was short one brakeman, and Booth, a volunteer, was acting for the moment as rear brakeman by consent of or at the request of the conductor. The latter was keeping no lookout to the rear. Booth swore that he had a position either on the ground or on the train about three cars from the one that struck the child, but that he had been instructed to watch the crossing south of the

depot.   None of the operatives saw the child and none pretend to have been keeping either a general lookout along the house track or watching the point at which the path crossed the tracks.   They all swore it was not regarded as a public crossing.   There is evidence to the effect that the approach of the train was not heralded either by the bell or whistle and that the only warning given of the fact that it was in motion was the usual noise made by a slowly moving train.   The company had no man on the rear car of the moving train nor at the south end of the standing car to look out for persons on the track.

Booth was called as a witness for defendant, and in impeachment of him plaintiff sought to show by other witnesses that on the day of the accident Booth stated to E. B. Smith and others that it was "the railroad company's fault and that Adams had a good cause of action against defendant" and that "it was the railroad's fault as they had no one on the rear of the train to look out for people crossing the track."   The witnesses so deposed over the objection of defendant and the matter is presented as error in the first, second and fourth assignments.   The point made is that a witness can not be contradicted on immaterial matters.   The principle invoked is well settled, and seems to be applicable to the testimony objected to.   The fact that he thought the company liable could not have been admissible under any circumstances as the liability of the company was the very meat of the inquiry; as was also the question whether the company was negligent in failing to have a man on the rear car to keep a lookout behind the backing train.   He did not testify that the defendant had a man on the rear car of the train, but testified to the contrary, so it was contradictory of none of his testimony.

Appellee contends the answers were admissible as showing a change of front on the part of the witness and in that way affecting his credibility.   Counsel cites no authority in support of his proposition, and we are unable to perceive upon what ground it is permissible to get immaterial statements of a witness before a jury in order to show a change of front on the part of the witness.   It is charged that Booth said there was no lookout on the rear car.   Booth so testifies.   In this respect he has not changed front.   Why then the necessity and where the justification for showing that he made a like statement to others, a fact which he denies and about which the other witnesses dispute him.

The court distinctly instructed the jury in writing that they should consider this testimony for no purpose except insofar as in their judgment it might bear upon the credibility of Booth, and appellee insists that this instruction rendered the error, if any, harmless.   We can not assent to this.   The fact remains that Booth testified to the absence of a lookout on the rear car and the fact remains also that the jury were instructed that they might consider the impeaching testimony in arriving at a just estimate of the weight and credibility of Booth's general evidence.

The third assignment presents further matter of the same nature and is also sustained.

By the sixth assignment the language of plaintiff's counsel in argument to the jury is complained of.   We do not approve the use of the abusive terms indulged in by counsel, but do not regard it as of sufficient

gravity to influence the result of this appeal. We refer to the assignment and express our disapproval in order to prevent its recurrence upon another trial.

Under the ninth assignment appellant complains of the following paragraph of the court's charge: "The duty of defendant in this case was to use that care in the operation of its train at the place and time of the accident which an ordinarily prudent person would have used under the same or similar circumstances to prevent injury." The objection urged against this charge is that it imposes the duty of care upon the company irrespective of the conduct of the injured party, and notwithstanding the jury may have found that there was no crossing at the point where the accident occurred. The charge announced the correct rule. It was laid down in Sympkins case, 54 Texas, 618, that the operatives of a railway train owed the general duty of reasonable lookout not only to those of right on the track but to trespassers as well. That if in this the operatives were derelict a recovery would be denied to a trespasser, not because the railway company was acquitted of wrong, but because the trespasser's own want of care intervened. The doctrine was there announced that an adult who had gone upon the track a trespasser might nevertheless recover if while on the track he was providentially stricken down, and the company by failing to discharge the general duty of lookout had injured him. The doctrine is recognized in Watkins case, 88 Texas, 20, in which the authorities are again reviewed, and so far as we know the rule is not open to question in this State. Certainly Railway Company v. Shiflet, 98 Texas, 331, is not in conflict with the two cited cases. Indeed, at page 332 Justice Brown recognizes the rule above announced, gives the reason for it and makes the distinction. In that case Shiflet was held to be of such an age that his discretion and knowledge of the danger of going to sleep upon a railway track was not open to question. So of course his right upon the track was a matter for inquiry. In the case before us, if it could not be held that Naomi's tender age conclusively placed her in the category of those incapable of contributory negligence, it is certainly true that the issue was in the case, and that the possession of that discretion on her part was a thing to be shown by defendant. If she was too young to be held responsible for her own conduct the question is not whether the company owed her a duty, but whether that duty was discharged by maintaining a reasonable lookout under all the circumstances of the situation.

The question of crossing *vel non* can affect only her right to be there and to cross at that point, and if the evidence did not take her out of the category of irresponsible infants the question of a crossing *vel non* was not in the case except insofar as it might affect, not the degree of care imposed by law, but the measure of caution which under the circumstances an ordinarily prudent person would have exercised in maintaining a proper lookout at that point. This view of the case was properly submitted and the assignments assailing the charge of the court on this point and on the degree of care imposed by law upon the child are overruled.

The fifth proposition under the tenth assignment presents what appears to us a just criticism of the part of the charge therein assailed. The tenth assignment is an assault on that part of the court's charge

which submits to the jury categorically the theories upon which they may find for plaintiff. In the fifth subdivision the jury are instructed, in substance, that if they find that the defendant backed its train against the standing car which injured the child and that such act constituted negligence they would find for plaintiff. Under the fifth proposition appellant complains that the paragraph is erroneous because in no event could the mere act of backing the train against the standing car be negligence unless the act was accompanied by excessive speed or failure to give warning or to keep a proper lookout. Under the paragraph referred to the jury were permitted to find for plaintiff though the company may have done no other act than that of backing the cars against a standing car. Certainly if that act was not marked by some independent dereliction of duty there could be no liability. It may be that in the light of the entire charge the matter complained of is not harmful. We dispose of the proposition in view of another trial. The other propositions presented under the tenth assignment are overruled.

The apparent assumption on the part of the court that the child had a right to cross at that point is cured by the close of the paragraph referring the jury to other paragraphs for instructions as to the defenses which, if found to exist, would defeat a recovery.

By the eleventh assignment appellant complains of the part of the charge in which the jury are instructed that if both the parents of the child were negligent in allowing the child to go upon the track the plaintiff could not recover for himself. The objection is that the negligence of both parents is required to defeat their recovery, whereas the negligence of either was sufficient. As a matter of fact the father was not at home and there was no evidence of negligence on his part. The error however is negative at most and had the defendant wished the separation of the issues a charge should have been requested covering the point. The error was in fact against the plaintiff.

The second proposition under this assignment complains of this portion of the charge because it also submits as an issue whether if the child was negligent her act was the proximate cause of her injury when in fact there could be no question upon the point. This was error under the authorities, but falls also within the negative class. (Park v. San Antonio Traction Co., 94 S. W. Rep., 331.) We do not agree with appellant that the error was repeated in affirmative form in the paragraph of the charge to which the twelfth assignment is addressed.

In paragraph twelve of the charge the court, upon the theory that the child was old enough to become a trespasser and to be guilty of contributory negligence in going upon a part of appellant's track where she had no right to be—submitted the issue of public crossing *vel non* at the point where the path crossed the tracks. The appellant contends that under the doctrine laid down in Shiflet's case, 98 Texas, 331, the evidence did not present the issue. In the case cited the plaintiff sought to prove that the public by use without protest from defendant had acquired the right to use the center of about half a mile of its main track as a footpath. The Supreme Court held that notwithstanding such use the mere silence of the company would not establish the right. But certainly the court did not intend to overthrow the line of cases holding that the right of the public to cross directly across the track at a par-

ticular point and the assent of the company might be established by circumstantial evidence. We have no difficulty in distinguishing the two kinds of cases.

The other objections to this paragraph are also without merit.

The third proposition is not a fair interpretation of the charge.

Under the fifth assignment appellant assails the action of the trial court in overruling special exceptions to the sixth paragraph of the petition upon which the cause was tried. In the pleading complained of the plaintiff, E. B. Adams, in support of his own right to recover, and in enumeration of special damage flowing to him by reason of the injury to his child, alleged in substance that because of her crippled condition he will be forced to incur large and heavy expense for her care and maintenance and education which he would not have been compelled to incur but for the negligence of the company, no amount being stated; that he has already been forced to incur large expense for medical treatment, medicine and nursing in the sum of $300. For himself he asks the sum of $10,000 as an amount sufficient to cover his entire loss. By special exception the appellant demanded that the plaintiff should point out the respects in which the cost of her education, care and maintenance will be thereafter increased. Also that he allege what he had been out for physicians fee, for medicine and for nursing, and allege that the sums were reasonable in order that defendant might prepare to meet and contest the issue thus tendered. The court overruled the exception, and in this we think he erred. Under the simplest rule of pleading the defendant was entitled to have this part of the demand itemized. The assignment is sustained. The same point is raised on the introduction of evidence upon these issues and the charge of the court, and what has been said upon the one disposes of the others.

On the measure of damages for the child the court charged the jury as follows: "If you find for the plaintiff, Naomi Adams, then you will find for the plaintiff as next friend for the minor child, Naomi Adams, for her use and benefit, whatever sum of money in your judgment will compensate her for the physical pain, suffering, mental anguish, discomfort, annoyance and mortification, if any, already suffered by her by reason of said injuries, if any, and which she may in future suffer, if any, and for general impairment of her ability to follow the interest and pursuits of other girls, if any, together with the general impairment of her ability to enjoy life, if any, and for her decreased capacity, if any, to fill the place and perform the services and duties after her majority she would have been competent to perform but for the injuries sustained by her, if any, which sum in no event to exceed the sum of twenty-five thousand dollars." The point that it is misleading in that it allows double damages is we think well taken. While we think it extremely doubtful whether a jury of average intelligence is ever in fact misled by such charges it seems to be well established that such charges require a reversal where the amount of the verdict is issuable on the record. (Houston Street Ry. v. Reichart, 87 Texas, 546; Butchers case, 12 Texas Ct. Rep., 115; Perry's case, 10 Texas Ct. Rep., 669; Nesbit's case, 13 Texas Ct. Rep., 656; Hannig's case, 91 Texas, 349; Highnote's case, 74 S. W. Rep., 920; Brock's case, 31 S. W. Rep., 500.)

We call attention also to the fact that the mention in the charge of the

amount claimed in the petition has been generally condemned as tending to impress the jury that in the opinion of the judge such a sum might be awarded under the evidence. (Newman v. Dodson, 61 Texas, 98; Brunswig v. White, 70 Texas, 512.) For reasons given in the cases cited it is not reversible error in this cause.

None of the other assignments require our notice. If they present error they have not influenced the disposition of this appeal and the points will not likely arise upon another trial. For the reasons given both the judgment for the plaintiff and for him in behalf of his child are reversed and the cause remanded.

*Reversed and remanded.*