## SOUTHWESTERN GAS & ELECTRIC CO. v. GRANT. (No. 2288.)

(Court of Civil Appeals of Texas, Texarkana. June 17, 1920. Rehearing Denied July 3, 1920.)

**1. Street railroads ⊚⟶117(8)—Motorman's negligence at crossing held question for jury.**

In action for damages to plaintiff's automobile struck by a street car at a street intersection, evidence as to the motorman's negligence in operating the car at a dangerous speed and in making no effort to stop or check the speed after having discovered that the automobile was in a dangerous position *held* sufficient to go to the jury.

**2. Street railroads ⊚⟶103 (3 )— Discovered peril doctrine defined.**

Contributory negligence of the owner of an automobile struck by a street car at a street intersection does not bar recovery for injury resulting from failure on the part of the motorman, after he discovered the danger, to use proper care to avoid the collision; the automobile owner having done all he could to get his automobile out of the way of the street car as soon as he discovered it.

**3. Evidence ⊚⟶472(4)—Opinion evidence as to automobile and street car collision not admissible.**

In action for injury to automobile struck by street car at crossing, it was not error to refuse to permit a witness to testify that he thought at the time plaintiff and the motorman discovered each other "they were too close together for either one to stop," nor to exclude the testimony (by deposition) of the motorman that the instant he saw the automobile he did everything he could have done to stop the car, there being testimony showing what the motorman could have done, and he having testified as to what he did do, as it was for the jury and not the witness to say whether he did all he could have done to stop or check the speed of the car.

Appeal from District Court, Bowie County; Rollin W. Rodgers, Special Judge.

Action by R. L. Grant against the Southwestern Gas & Electric Company. From judgment for plaintiff, defendant appeals. Affirmed.

In a collision between one of appellant's street cars moving north on State street in Texarkana, and appellee's automobile moving west on Fifth street where it crosses State, the automobile was damaged in the sum of $700. Alleging that the collision was due to negligence specified on the part of the motorman operating the street car, appellee sued appellant and recovered judgment for said sum.

On issues made by the pleadings and, as we think, by the testimony, the jury found, among other things, that appellee was not guilty of negligence and that the motorman was, in that as he approached and crossed

Fifth street he (1) did not use care to have the street car under proper control, (2) operated same at a dangerous rate of speed, and (3) failed to use proper care to avoid the collision after he discovered it was imminent.

It appeared from the testimony that State and Fifth streets were popular thoroughfares. They were, respectively, 75 or 80 feet wide, including sidewalks, and 52 feet wide from curb to curb of the sidewalks. The view south on State street of persons operating automobiles moving west on Fifth street was obstructed by a house and trees at the southeast corner of Fifth, so they could not see street cars approaching from the south on State until they got within a short distance of the latter street. The same obstructions prevented motormen operating street cars moving north on State from seeing automobiles approaching from the east on Fifth until they got within a few feet of the latter street.

Briefly stating it, appellee's account of the accident was as follows: As he approached the crossing, his attention was directed to a slowly moving buggy ahead of him, which he wished to pass. Hence he did not look for, and therefore did not see, the street car until he was warned of its approach by Dr. White, who was in the automobile with him. The automobile, moving at the rate of from 4 to 6 miles an hour, had then reached a point very near if not on appellant's track, and the street car was only 10 or 12 feet from it. To avoid a collision which he thought otherwise was inevitable, appellee turned his automobile north on State street. While he was endeavoring in that way to get the automobile clear of the track, the front part of the street car, moving 25 or 30 miles an hour, struck and knocked it east about 23 feet. The automobile was near the center of Fifth street, moving west, when appellee turned it north to avoid the street car, and it was at the north boundary line of Fifth street when the street car struck it. After it struck the automobile, the street car moved on north about 75 feet before it stopped. "I never," said appellee, "saw the street car make any check until it struck me." And the witness Ivey said, "The motorman did not throw on the brakes before he hit Dr. Grant."

The motorman's account, stating it nearly as briefly, was as follows: Ringing the bell and keeping the usual lookout ahead as he approached the crossing, he saw the automobile when the street car "was right at the south intersecting line of Fifth street." The street car was then moving at the rate it usually moved on State street, to wit, 8 or 10 miles an hour. The automobile was then 20 or 25 feet east of the curb of the sidewalk on the east side of State street, moving west at the rate of 25 miles an hour or more, "cut-

223 S.W.—35

ting toward the north line of Fifth street." "At any time after I saw the automobile," he said, "it did not appear to me that the driver of the automobile intended to bring it to a stop, or in any way change its rate of speed, but it appeared to me that the driver of the automobile intended to cut or swing into State street diagonally off Fifth street, which he did do, and on account of the high rate of speed at which he was running he was unable to turn short enough to miss the street car entirely, and struck one corner of it. * * * Just as soon as I saw the automobile, I shot the power off on the street car and applied the brakes in an effort to stop, as I thought from the movement of the automobile it was going to try and cut the corner ahead of me at a high rate of speed, and on that account I acted as soon as I saw it approaching."

The effort the motorman testified he made to reduce the speed of the street car was unavailing, it seems, for he said it was still moving 8 or 10 miles an hour when the automobile ran against it. At that rate of speed the street car could have been stopped with means provided for the purpose, without injury to it or passengers in it, within 30 or 40 feet, he said. It was stopped on the occasion in question, he added, within 8 or 10 feet of the point where the automobile struck it. Appellant had instructed the motorman, the latter said, "to proceed slowly and to have his car under control from Third to Seventh street on State street," which included, he explained, "the approach to Fifth street."

Arnold & Arnold, of Texarkana, Ark., for appellant.

Wheeler & Robison, of Texarkana, Tex., for appellee.

WILLSON, C. J. (after stating the facts as above). The contention that the trial court erred when he refused to instruct the jury to find in appellant's favor is predicated on the claim that the testimony did not authorize a finding that the motorman was guilty of actionable negligence, or, if it did, required a finding that appellee also was guilty of negligence which, concurring with that of the motorman, was a proximate cause of the collision.

[1] We think the jury not only had a right to say from testimony referred to in the statement above that the motorman was guilty of negligence in that he operated the car at a dangerous speed over the crossing at Fifth street, but also had a right to say he was guilty of negligence in that, having discovered that appellee, because of the street car, "was in a perilous position, or about to enter into such position" (Ry. Co. v. Finn, 101 Tex. 511; 109 S. W. 918), in time with means at his command to have stopped the

street car or so checked the speed thereof as to have avoided the collision which occurred, he made no effort whatever to do so.

[2] Therefore, even if it appeared as a matter of law that appellee was guilty of contributory negligence, appellant's contention should be overruled; for negligence on the part of appellee in exposing his automobile to danger from a collision with the street car was not a reason why he should not recover on account of injury thereto as the result of a failure on the part of the motorman, after he discovered the danger, to use proper care to avoid the collision. 20 R. C. L. 138 et seq.

Notwithstanding what was said by the Court of Civil Appeals in Southern Traction Co. v. Wilson, 187 S. W. 536, we do not understand the rule recognized in other jurisdictions and invoked by appellant, which denies the applicability of the doctrine of "discovered peril" in a case where the "negligence of the plaintiff continued until the very moment of the injury," to be the law in this state. The decision in the Wilson Case was by a divided court. It is in conflict, it seems, with Ry. Co. v. Jacobson, 28 Tex. Civ. App. 150, 66 S. W. 1111 (in which a writ of error was denied by the Supreme Court), and other cases decided by courts in this state. It (the Wilson Case) is now pending undisposed of on a writ of error granted by the Supreme Court.

But if the rule invoked is the law in this state, we do not think this case on its facts is within it. It appeared without dispute in the testimony that appellee did all he could to get his automobile out of the way of the street car as soon as he discovered it.

[3] Plainly, it was not error to refuse to permit the witness White to testify that he thought that at the time appellee and the motorman discovered each other "they were too close together for either one to stop"; and we do not think it was error to exclude the testimony (by deposition) of the motorman that the instant he saw the automobile he did everything he could have done to stop the car. There was testimony showing what the motorman could have done, and he testified as to what he did do in an effort he said he made to stop the street car and so avoid the collision. It was for the jury and not the witness to say whether he did all he could have done to stop the car or so check the speed thereof as to avoid hitting the automobile.

Assignments in appellant's brief not disposed of by what has been said are also overruled. So far as they point out error in the trial in the court below, the error was harmless if, as we have determined is the case, the findings on the issue of discovered peril were warranted by testimony.

The judgment is affirmed.