## WICHITA COCA COLA BOTTLING CO. v. LEVINE.

### No. 12925.

Court of Civil Appeals of Texas. Fort Worth.

Jan. 27, 1934.

Rehearing Denied Feb. 17, 1934.

Bert King, of Wichita Falls, for appellant.

E. W. Napier, of Wichita Falls, for appellee.

DUNKLIN, Chief Justice.

In the city of Wichita Falls, Lamar street runs north and south and is intersected and crossed by Seventh street, running east and west. Mike Levine attempted to cross Lamar street from west to east, north of the crossing of that street by Seventh street, and in so doing was struck by an automobile truck, traveling from the south, north on Lamar street, owned by the Wichita Coca Cola Bottling Company and operated by Bob Elrod, its employee. Levine recovered a judgment against that company for the sum of $1,900, from which the defendant has appealed.

Plaintiff's suit was based on allegations of negligence, in the first instance, on the part of the driver of the truck in failing to keep a proper lookout and in failing to give proper warning signals for pedestrians at the place where plaintiff was injured; and also on allegations of negligence of the driver in failing to avoid striking the plaintiff after he discovered that the latter was in a position of peril and from which, likely, he would not extricate himself in time to avoid injury.

The issues of what is commonly denominated as discovered peril, as above indicated, were the only issues submitted to the jury, and findings of the jury on those issues in favor of the plaintiff were the basis of liability of the defendant, on which a recovery was awarded.

The action of the trial court in failing to submit any other issue of negligence than

that of discovered peril, presumably, was based upon the uncontroverted proof that at the time of his injury plaintiff was attempting to cross Lamar street against a red-light signal, contrary to the ordinances of the city, and therefore was guilty of contributory negligence, as a matter of law, as pleaded by the defendant; and no contention is made here that such action on the part of the court was error.

There was ample testimony to prove that after plaintiff had reached a point near the middle of Lamar street, while attempting to cross it from west to east, and after he discovered the approaching truck from the south, he became confused, and in an attempt to avoid being struck he turned, first, back west, then changed his mind and turned east, in the direction he had started, and after so turning he was struck by the truck and was seriously injured. The point at which he was injured was between the middle line of Lamar street and its east curb.

Bob Elrod, the driver of the truck at the time, testified that when he reached the south boundary of the intersection of the two streets he was driving 18 or 20 miles an hour, but when he saw the plaintiff and had reached the middle of that intersection, he had slowed down the truck to 15 miles an hour, and as he traveled further north he applied the brakes of the truck. He further testified as follows:

"Q. I wish you would tell the jury which side, if you have it in mind—well which way was he going—we will say about the time that you got to the middle of 7th Street, which direction was Mike traveling? A. When I got to 7th Street he was coming across and stopped here—

"Q. Traveling east? A. Yes, sir.

"Q. When he was traveling east did you figure on which side you were going to pass him? A. Of course I thought when I first saw him he would go on, and I started to go around this other way on the left side you know and he started back and I started this way—I started to the right and he turned in front of me and I applied my brakes and stopped.

"Q. How far did the car drive after you struck him? A. About four or five feet— what was your question?

"Q. About how far the car traveled after you struck him? A. About four or five feet, that is right.

"Q. Was there anything else that you could have done other than you did, and have avoid-ed hitting him like you did? A. No, sir, there was not.

"Q. Well let's see—you could have stopped your car? A. No, sir, I could not stop it then.

"Q. What was the matter you could not stop it? A. Well I thought he was going to stop—

"Q. Did you have any brakes on your car? A. Yes, sir.

"Q. Were they good? A. Yes, excellent.

"Q. How far, at the rate of 15 or 20 miles an hour do you have to go before you can stop your car with the brakes you had? A. I did stop it in less than four or five feet.

"Q. Where were you when you first saw the old man? A. Right about the middle of the street.

"Q. In the middle of the intersection? A.. Yes."

Following are special issues submitted to the jury, with their findings thereon:

"1. Do you find from a preponderance of the evidence that the driver of the truck discovered the dangerous position of the plaintiff, Mike Levine, and realized his peril, and realized that he would probably not be able to extricate himself therefrom, at a time when, in the exercise of ordinary care, by the use of all the means at his command, consistent with his own safety and the safety of the defendant's property, he could have avoided the collision? Answer: Yes.

"2. If you have answered special issue No. 1 no, you need not answer this issue, but if you have answered such issue 'yes' then do you find from a preponderance of the evidence that said truck driver after he was apprised of the facts, as shown by your affirmative answer to the preceding issue, if you have so answered, failed to exercise ordinary care to use all the means at his command, consistent with his own safety and the safety of the defendant's property, to avoid such collision? Answer: Yes.

"3. If you have answered special issue No. 2 'no' you need not answer this issue, but if you have answered such issue 'yes' then do you find from a preponderance of the evidence that such failure, if any, on the part of said employee, was a proximate cause of the plaintiff's injuries, if any? Answer: Yes."

One objection urged by the defendant to special issue No. 1 was, in substance, that the language used in that issue, "at a time when," was too general and, in lieu thereof, the inquiry should have been whether or not the driver realized plaintiff's peril after the

latter had turned east, following his first turn west, as "the time when" he (the driver) realized plaintiff's perilous situation. And in connection with that objection, counsel for defendant called the court's attention to the driver's testimony, shown above. The argument here made in support of that objection is that, in view of other testimony tending to show that plaintiff was confused when he discovered the approach of the truck, the jury probably might have concluded that plaintiff was in a perilous situation at all times, and therefore tne driver owed him the same duty to avoid injuring him when he turned west as after he had changed his course and turned back east. Counsel for defendant also objected to issues Nos. 2 and 3, on the ground that the same vice was necessarily included therein.

Under the settled rule of decisions in this state, the doctrine of discovered peril did not apply until the driver of the truck actually discovered the danger of striking the plaintiff, even though it should be said that he was guilty of negligence in not discovering it sooner. According to the testimony of the driver, if plaintiff had not turned back east after first turning to the west, he would not have been injured. If it be true, as testified by the driver, when he first saw plaintiff near the middle of the street headed east he turned his truck to the left side of Lamar street so as to avoid injuring him, and then turned to the right after he saw plaintiff change his course to the west, and struck him when plaintiff again turned to the east; and if, after plaintiff had again turned to the east, the driver then for the first time discovered that he was in danger of being struck by the truck as it was then moving, and immediately used all means at his command to avoid striking him, as the driver testified—there would be no liability.

The objection so made to the court's charge was sufficient to require the court to submit the issue in proper form without the necessity of a requested special issue for the same purpose. 3 Tex. Jur. pp. 208, 209, and 212, citing, among others, the leading case Gulf, C. & S. F. R. Co. v. Conley, 113 Tex. 472, 260 S. W. 561, 32 A. L. R. 1183.

And defendant's requested issues, which were refused, although perhaps not in correct form, were also sufficient to call attention to the error in the issues submitted, pointed out in the objection thereto, and to require the court to submit those issues in correct form. Graves v. Haynes (Tex. Com. App.) 231 S. W. 383; 3 Tex. Jur. 215.

We have reached the conclusion that there was reversible error in those rulings.

■ Even on the issue of alleged negligence of the driver in the first instance, and before he discovered plaintiff's peril, after plaintiff turned west, as testified by the driver, the latter had the right to assume that he would continue in that course, and would not be chargeable with negligence in failing to foresee that plaintiff would negligently change his course to the east. Ft. Worth & D. C. Ry. Co. v. Shetter, 94 Tex. 196, 59 S. W. 533, 535: Houston & T. C. R. Co. v. Smith, 52 Tex. 178; Horwitz v. Jefferson County Traction Co. (Tex. Civ. App.) 188 S. W. 26; Houston & T. C. R. Co. v. O'Donnell, 99 Tex. 636, 92 S. W. 409.

In Fort Worth & D. C. Ry. Co. v. Shetter, supra, this is said: "We think it well settled that one person is not bound to anticipate negligent conduct on the part of another, and, therefore, that a jury would not be justified in finding that the brakeman, before he saw plaintiff actually in danger, knew that he was negligently going into danger. * * * It is only when they have realized that he cannot or will not get out of the way that the duty of averting a collision arises."

In Houston & T. C. R. Co. v. Smith, 52 Tex. 178, this is said: "The law presumes that a person walking upon a railroad track will leave the same in time to prevent injury from an approaching train of which he has knowledge, or should have, by the ordinary use of the senses of hearing and seeing, and the managers of the train may act upon this presumption."

■ In some of the decisions cited, expressions are used to the effect that liability of the defendant, under the doctrine of discovered peril, arises after the defendant has discovered the plaintiff's peril and that he is unconscious of his danger; and appellant insists that since plaintiff in this case realized his perilous situation before he was injured, the doctrine of discovered peril has no application. It is our conclusion that there is no merit in that contention; we believe the same rule applies whether plaintiff is conscious or unconscious of his danger, if it is apparent that likely he will not extricate himself therefrom.

■ There is no merit in the further complaint of the failure of the court to embody, in the special issues, the particular methods by which the driver of the truck could have avoided injuring the plaintiff, pleaded by the plaintiff, to wit, by turning the truck slightly

to the left, by checking his speed, or by stopping, or by giving timely warning of the approach of his truck; and especially since that objection was not urged to the issues. Furthermore, plaintiff alleged failure to resort to any of those methods and also that the defendant failed "to do any other act or thing to avoid running plaintiff down, as aforesaid."

In plaintiff's petition, upon which the case went to trial, the defendant was named as "Coca Cola Bottling Works, a domestic corporation." By leave of the court first had, plaintiff was permitted to file a trial amendment, designating the defendant as "Coca Cola Bottling Works and Wichita Coca-Cola Bottling Company, a domestic corporation." That amendment was filed after E. A. Denny had testified that he was the manager of the Wichita Coca Cola Bottling Company, which he said was also sometimes called "Coca Cola Bottling Works," but that the correct name was the Wichita Coca Cola Bottling Company, which was the only corporation doing a bottling business in Wichita Falls; that he was served with citation in this case and knew that it was intended for his company, and that an answer had been filed in behalf of that company. We believe it clear that the court did not err in allowing the trial amendment to be filed. Rowan v. Stowe (Tex. Civ. App.) 193 S. W. 434; Latham v. Jordan (Tex. Com. App.) 17 S.W.(2d) 805; Johnson v. Bingham (Tex. Civ. App.) 251 S. W. 529; Rea v. Johnson (Tex. Civ. App.) 270 S. W. 1077.

For the error noted above, the judgment of the trial court is reversed, and the cause is remanded.